IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AYYAKKANNU MANIVANNAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 18-297 |
| ) | Magistrate Judge Maureen P. Kelly |
| v. ) | |
| ) | Re: ECF No. 63 |
| U.S. DEPARTMENT OF ENERGY, ) | |
| ) | |
| Defendant. ) | |

## OPINION

**KELLY, Magistrate Judge**

Presently before the Court is a renewed Motion to Dismiss filed on behalf of Defendants United States Department of Energy (the "DOE") and the United States of America (collectively, "Defendants"). ECF Nos. 63, 88. Defendants assert that Plaintiff Ayyakkannu Manivannan's ("Manivannan") claims for conversion and intentional infliction of emotional distress ("IIED") are barred by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2401(b), 2680(h). For the reasons that follow, judgment will be entered in Defendants' favor as to Manivannan's claim for conversion, and the Motion to Dismiss will be granted in part and denied in part as to his IIED claim.[1]

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff resigned his job with the DOE following allegations of disturbing actions taken against an intern. The allegations led to an internal investigation and state criminal prosecution. Manivannan has since filed several lawsuits related to those events.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed.  ECF No. 9.

As relevant here, on March 8, 2018, Manivannan commenced Civil Action No. 18-297 in the United States District Court for the Western District of Pennsylvania alleging a single claim for the violation of the Privacy Act of 1974. Complaint, <u>Manivannan v. U.S. Department of Energy</u>, No. 18-297 (W.D. Pa. Mar. 3, 2018), ECF No. 1. On July 11, 2019, Manivannan filed a second civil action with this Court at Civil Action No. 19-828, alleging claims for: "Improperly Withholding, Damaging, and Destroying Plaintiff's Personal Property" (Count I); Negligence (Oversight, Management, and Supervision) (Count II); and Negligence (Improper Communication with Centre County District Attorney's Office) (Count III). Complaint, <u>Manivannan v. United States</u>, No. 19-828 (W.D. Pa. Jul. 11, 2019), ECF No. 1. By Order dated January 2, 2020, the two actions were consolidated for pretrial purposes at Civil Action No. 18-297. Manivannan then filed his Consolidated Second Amended Complaint alleging claims under the Privacy Act, 5 U.S.C. § 552a, and the FTCA. <u>See</u>, Consolidated Second Amended Complaint, <u>Manivannan v. U.S. Department of Energy</u>, No. 18-297 (W.D. Pa. Mar. 3, 2018), ECF No. 59.

Upon resolution of an initial Motion to Dismiss and Manivannan's appeal to the United States Court of Appeals for the Third Circuit, this action was remanded for this Court to consider whether Manivannan's remaining claims for conversion, IIED "resting on [DOE counsel's] cooperation with state prosecutors," and violation of the Privacy Act may withstand grounds for dismissal previously raised by Defendants. <u>Manivannan v. United States Dep't of Energy</u>, 42 F.4th 163, 168, 174 (3d Cir. 2022). Defendants have renewed their Motion to Dismiss Manivannan's claims for conversion (Count III) and IIED (Count VII). ECF No. 92, <u>and see</u>, ECF No. 64 at 22-25.

Manivannan has filed a Supplemental Brief in Opposition to Defendants' Motion to Dismiss. ECF No. 93. The renewed Motion to Dismiss is ripe for consideration.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"To determine the sufficiency of a complaint, a court must take three steps. First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011), as amended (June 6, 2011) (quoting Iqbal, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" Id. (citations omitted). If the facts alleged in the complaint "show" that the plaintiff is entitled to relief, the court should deny the motion to dismiss. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

With relevance to the renewed Motion to Dismiss, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citing Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985)). "[A]n exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered

'without converting the motion [to dismiss] into one for summary judgment.'" Id. (citation omitted).

Manivannan attached to his Consolidated Second Amended Complaint various forms and appendices he submitted to the DOE to initiate his FTCA claims, as well as responses received upon initial agency review and reconsideration. ECF No. 59-2 – 59-14. These documents have been reproduced in the DOE's Supplemental Brief in Support of Their Motion to Dismiss the Consolidated Second Amended Complaint and thus may be considered by the Court. Defendants' motion also relies in part upon exhibits that are not attached to the operative complaint or an integral part of Manivannan's claims. See ECF No. 63-2; ECF No. 92-3.

After remand, this Court notified all parties that as related to Defendants' assertion that the applicable FTCA statute of limitations bars Manivannan's conversion claim, Defendants' exhibits will be considered pursuant to Federal Rule of Civil Procedure 12(d). Thus, the motion to dismiss will be treated as a motion for summary judgment. ECF No. 88 (citing Lunn v. Prudential Ins. Co. of Am., 283 F. App'x 940, 942 (3d Cir. 2008) (exhibits reflecting expiration of statute of limitations properly considered where district court converts a motion to dismiss to a motion for summary judgment and provides notice of the conversion)). The parties were advised that the Court would evaluate the motion under the standards in Federal Rule of Civil Procedure 56, and that Manivannan could supplement the record. He has not filed any additional exhibits in opposition to the pending motion.

Rule 56 of the Federal Rules of Civil Procedure provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable factfinder could return

a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Mil. & Veterans Affs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

### III. DISCUSSION

#### A. Conversion Claim (Count III)

Defendants move to dismiss with prejudice Manivannan's conversion claim at Count III because he filed this action beyond the time allowed under FCTA's statute of limitations. ECF No. 63. Upon review, the Court agrees that Manivannan's delay bars his claim and therefore judgment is properly entered in Defendants' favor as to the conversion claim.

#### 1. FCTA Requirements

"As a sovereign, the United States is immune from suit unless it consents to be sued." Sconiers v. United States, 896 F.3d 595, 597 (3d Cir. 2018) (quoting White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010)). In the case of certain tort claims, "the FTCA is 'a limited

waiver of the sovereign immunity of the United States.'"[2] Id. (quoting Miller v. Philadelphia Geriatric Ctr., 463 F.3d 266, 270 (3d Cir. 2006)). The FTCA provides that it "shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. The United States Supreme Court "has described the Act as marking the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit." Pascale v. United States, 998 F.2d 186, 187 (3d Cir. 1993) (quoting Feres v. United States, 340 U.S. 135, 139 (1950)).

The FTCA is a limited waiver of immunity and thus "is strictly construed in favor of the sovereign." Lightfoot v. United States, 564 F.3d 625, 628 (3d Cir. 2009) (citing Orff v. United States, 545 U.S. 596, 601–602 (2005)). Claims are subject to clearly defined filing requirements and statutes of limitations. Without grounds for equitable tolling, the failure to adhere to those requirements bars recovery. Sconiers, 896 F.3d at 599; United States v. Wong, 575 U.S. 402, 420 (2015) (FTCA time bars are subject to equitable tolling).

"To make a claim under the FTCA, a claimant first must file her claim with the administrative agency allegedly responsible for her injuries." Sconiers, 896 F3d at 597-98 (quoting Santos ex rel. Beato v. United States, 559 F.3d 189, 193 (3d Cir. 2009)). 28 U.S.C. § 2675(1) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

---

[2] To give effect to the waiver, the FTCA provides "federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.'" 28 U.S.C. § 1346(b)(1). Millbrook v. United States, 569 U.S. 50, 52 (2013).

> The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

Section 2401(b) provides for a statute of limitations to present a claim to an agency and for the initiation of litigation once a final denial is issued.

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). DOE regulations provide that a final denial may be tolled by the timely submission of a written request for reconsideration.

> Before the commencement of suit and before the 6-month period provided in 28 U.S.C. 2401(b) expires, a claimant, or the claimant's duly authorized agent, or legal representative, may file a written request with the DOE General Counsel for reconsideration of a final denial of a claim. Upon the timely filing of a request for reconsideration the DOE has 6 months from the date of filing to decide the claim, and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until 6 months after the request for reconsideration is filed. Final DOE action on a request for reconsideration shall be made in accordance with the provision (a) of this section.

10 C.F.R. § 1014.9(b). Section 1014.9(a) provides that final denial shall be in writing and "may include a statement of the reasons for the denial and shall include a statement that, if the claimant is dissatisfied with the Department's action, the claimant may file suit in an appropriate U.S. District Court not more than 6 months after the notification is mailed." 10 C.F.R. § 1014.9(a).

### 2. Compliance with Filing Requirements

Manivannan states that after he was placed on administrative leave on August 12, 2015, he repeatedly asked for permission to return to his office to collect his personal belongings. ECF No. 59 ¶¶ 173-74. Permission was denied, and the DOE refused to return the personal property that remained in Manivannan's office. Id. ¶ 175. Manivannan alleges that the items included

7

irreplaceable "notes, custom-built diamond sensor electrodes, cell design, teaching course materials, and plastic slides used for scientific presentations reflecting 25 years of Dr. Manivannan's research." Id. ¶ 177. To date, the items have not been returned. Manivannan alleges that this failure resulted in the loss of business opportunities and work in the private sector. Id. ¶ 182.

It is undisputed that in May 2017, Manivannan filed a *pro se* civil action in the Magistrate Court of Monongalia County, West Virginia, seeking the return of personal property that remained in his office. Id. ¶ 140. That action was eventually removed to the United States District Court for the Northern District of West Virginia, and was dismissed on May 21, 2018, based on Manivannan's failure to exhaust administrative remedies by first presenting his claim to the agency as required by the FTCA. Id. ¶¶ 141-43. See Manivannan v. United States, No. 1:17-cv-216 (N.D. W.Va. May 21, 2018) (ECF No. 22) (adopting report and recommendation because Manivannan failed to exhaust administrative remedies as required by Section 2675 of the FTCA).

Manivannan followed with a second lawsuit filed in the United States District Court for the Northern District of West Virginia, and again sought damages and injunctive relief related to his personal property and responses to Freedom of Information Act requests related to the investigation into the charges against him. Id. ¶ 142. Manivannan's property claims were again dismissed for failure to exhaust. See Manivannan v. Department of Energy, No. 17-192 (N.D. W.Va. May 21, 2018) (ECF No. 52 at 2, 4) (adopting report and recommendation and dismissing property claims for failure to exhaust administrative remedies).

On March 18, 2018, Manivannan submitted five claims to the DOE. ECF No. 59-2 – 59-6. In the first claim, Manivannan alleged that for over 19 months, his requests that the agency return his personal belongings were refused, resulting in the loss of tangible personal property in the

amount of $25,718, and intangible or irreplaceable tangible losses in the amount of $600,000. ECF No. 59-2. Manivannan states that he is entitled to this amount because the failure to return his property "heavily impacted my consultancy business of my company for the past two years and any future years leading to loss of money." Id. at 8.

The second claim for "Mail Fraud Delaying the Recovery of Personal Property Damage" alleged that a summons issued by a state court magistrate judge to be served by mail on DOE Director Bochenek was improperly intercepted and opened by an agency attorney. ECF No. 59-3. Manivannan claims that this allegedly illegal conduct delayed the retrieval of his personal property by eight months. Thus, he requested $54,000 for "damages due to delay." Id. at 4.  In an addendum, Manivannan distinguished this claim from his property loss claim: "The list of my personal belongs [sic] and all other items including materials that are either intangible (scientific ideas), or tangible but irreplaceable items and several other items **are claimed in a separate Tort Claim. [ ] This Tort Claim specifically requests the damages … due to delay caused by mail fraud**." Id. (emphasis added). While the basis of this claim lies in the handling of the subpoena, the damages are duplicative of those claimed in his "separate" property loss claim, which seeks compensation for the loss of use of his property "for the past two years and any future years." ECF No. 59-2 at 8.

Manivannan separately submitted additional claims for "Personal Injury and Livelihood Damage," ECF No. 59-4, "Personal Injury Damage by Collusion, Obstruction of Justice and False Accusation," ECF No. 59-5, and "Congressional Defamation," ECF No. 59-6. On May 9, 2018, Manivannan submitted a sixth claim for "Personal Injury Damages by Post-Decision based on false information." ECF No. 59-7. And on October 12, 2018, he submitted a claim for damages from the allegedly wrongful withholding of "Medical Records." ECF No. 59-8.

On June 11, 2018, the DOE sent a final denial of all claims submitted on March 18, 2018, and May 9, 2018. ECF No. 59-9. The agency noted that, "[w]ith the exception of your personal property damage claim, your remaining claims are barred under the FTCA." Id. As to the personal property claim, the agency denied the claim as unsubstantiated.

> With regard to your claim of personal property damage in the amount of $625,718, the attached is a copy of Exhibit 1 that you filed with your claim listing personal property that you claim was in your government-assigned office and/or lab when you were placed on administrative leave. By letter dated April 20, 2018, you were requested to provide evidence and/or additional information to support your claim and value of the personal property. Your letter dated April 29, 2018, did not provide any evidence that the property was owned by you or, for that matter, if the property existed at all. For example, you specifically alleged that a boron-doped diamond (BDD) electrode was not returned to you. An additional search of the office and the labs where you had previously worked was conducted, and no such electrode was located. Further, we have no record of you having possessed such an item. Additionally, you were previously provided a copy of two affidavits by NETL employees affirmatively stating that they delivered you property to you personally.

Id. The agency provided Manivannan notification of its final denial by certified mail and included information related to the time allowed to either file suit or request reconsideration. Id.

On December 10, 2018, Manivannan submitted a request for reconsideration of the denial of his "claims filed with the DOE dated March 18, 2018." ECF No. 59-11.[3] It is undisputed that on January 10, 2019, the DOE denied Manivannan's request for reconsideration. The denial referenced only the personal property claim and noted that Manivannan "supplied no new evidence warranting a decision different from that issued in the Chief Counsel's final determination." ECF No. 59-12. In denying reconsideration, the DOE informed Manivannan that if he was dissatisfied with the final denial of his claim, he "may file suit in an appropriate U.S. District Court not more than 6 months after this notification was mailed." Id.

---

[3] Manivannan has not provided evidence that he timely requested reconsideration of the denial of his May 9, 2018 claim for "Personal Injury Damages by Post-Decision based on false information." ECF No. 59-7.

10

On February 4, 2018, Manivannan submitted a request for reconsideration related to the November 20, 2018 denial of his claim related to medical records. ECF No. 59-13. By separate letter sent the same day, Manivannan submitted a response to the DOE's reconsideration denial. ECF No. 59-14. Manivannan stated that the denial referenced only his personal property claim and thus he requested another response regarding the "five other tort claims mentioned in claimant's December 10th request for reconsideration." Id. Manivannan itemized these omitted claims as follows:

- Mail Fraud Delaying the Recovery of Personal Property Damage (3/18/2018)

- Personal Injury and Livelihood Damage (3/18/2018)

- Personal Injury Damage by Collusion, Obstruction of Justice and False Accusation (3/18/2018)

- Congressional Defamation (3/18/2018)

- Personal Injury Damages by Post-Decision Based on False Information (5/9/2018)

Id. at 2.

In support of the pending Motion to Dismiss, Defendants have submitted an affidavit from Susan Beard, the Assistant General Counsel at the DOE. ECF No. 92-3. She attests to executing and mailing the January 10, 2019 final denial of reconsideration. The record does not reflect that the agency took any further action on Manivannan's claims or that it sent a response to his letter complaining of the scope of the January 10, 2019 final denial of reconsideration.

On July 11, 2019, six months and one day after the DOE mailed the reconsideration denial, Manivannan filed a Complaint in this Court at Civil Action No. 19-828 alleging, among others, a claim for "Improperly Withholding, Damaging, and Destroying Plaintiff's Personal Property." ECF No. 1 at 3. According to Defendants, because suit was not filed within six months of the

mailing of the agency's final denial of reconsideration, Manivannan's conversion claim is barred. ECF No. 92 at 6 (citing Abdullah v. Miller, 673 F. App'x 135, 139 n.1 (3d Cir. 2016) (tort claim barred where plaintiff filed complaint 10 days after expiration of statute of limitations)).

In his Supplemental Brief in Opposition, Manivannan responds that because the DOE's final denial of reconsideration identified only his initial property claim, the conversion claim remains viable through his March 18, 2018 claim for "Mail Fraud Delaying the Recovery of Personal Property Damage." ECF No. 93 at 6. This claim for delay damages was denied on June 11, 2018, and was included in Manivannan's December 10, 2018 request for reconsideration. Id. at 3-4. According to Manivannan, because the agency never issued a final denial of his delay-related claim, the terms of 28 U.S.C. § 2675(a) permit Manivannan at his option and "at any time thereafter" to deem silence as a final denial. Id. at 4-6. He did so on July 11, 2019, and thus Manivannan argues he timely filed suit for conversion.

The "deemed denial" extension of the statute of limitations finds precedential support in Pascale v. United States, 998 F.2d at 192-93, where the Third Circuit determined that permitting a claimant to "deem" agency silence as a final denial achieves the "congressional purpose … to provide more fair and equitable treatment to claimants, some of whom may be proceeding *pro se*." Id.

> It may be surprising that Congress chose not to impose a conventional statute of limitations for suits filed under the deeming provision of the Federal Tort Claims Act. As long as a claimant files an administrative claim within two years of its accrual and the agency does not send notice of final denial, the claimant may wait indefinitely before filing suit. See Boyd v. United States, 482 F. Supp. 1126, 1130 (W.D. Pa. 1980) ("plaintiff [who waited sixteen months after filing claim with agency] was entitled to treat [the agency's] failure [to deny his claim] to be a final agency action *at any time thereafter* and is not barred by the statute of limitations in § 2401(b).").

Id. at 193. See also Anson v. United States, 19-CV-0013, 2021 WL 3572755 (W.D. Pa. July 7, 2021) (citing Pascale, 998 F.2d at 192-83) ("[i]f Defendants intend to argue that Plaintiff is subject to a six-month limitation period even if he deemed his claim to be denied, that is not the case. The Third Circuit does not consider there to be any limitations in the time to file after a complainant has deemed his claim administratively denied under § 2675(a).").

That said, Manivannan's argument faces an insurmountable hurdle. It cannot be reasonably disputed that Manivannan included his damages for delay in his initial "Personal Property Damage" claim for $600,000. ECF No. 59-2 at 8. As drafted by Manivannan, this sum includes the loss of use of his property "for the past two years and any future years." Id. Thus, the letter issued by the DOE Assistant General Counsel and sent by certified mail on January 10, 2019, referencing his property claims constitutes a "final denial" that started the clock "to file suit in an appropriate U.S. District Court." ECF No. 59-12. Manivannan's failure to do so within six months bars his claim. See D.J.S.-W. by Stewart v. United States, 962 F.3d 745, 749 (3d Cir. 2020) ("The FTCA dictates that a tort claim against the United States shall be forever barred unless it is presented to the appropriate Federal agency within two years after [it] accrues and then brought to federal court within six months after the agency acts on the claim." (quoting Wong, 575 U.S. at 405). See also, Yedwab v. United States, 489 F. Supp. 717, 719 (D.N.J. 1980) (providing a "walk-through" for how the date is calculated and concluding that filing six months and one day after mailing is not "within" six months[4]); Dickson v. United States, No. 1:14-CV-01784, 2016 WL

---

[4] "To display the simplicity of the calculation, the court appends a 1979 calendar. Suppose the mailing date were the last day of a month, say, January 31, 1979, a Wednesday. That day would be excluded. A claimant would have the six month period after January 31 within which to begin an action by filing a complaint with the clerk of the court. This full six month period would embrace the months of February through July, and the last day (which is included) of that full six month period would [be] July 31, 1979, a Tuesday. To allow filing on August 1, 1979 would be to allow six months and a day after January 31, 1979. This is not the statutory period. The period is "six months" after the mailing date, and the action must begin "within" that period, not outside it." Yedwab, 489 F. Supp. at 719. In this case, the final denial was mailed on January 10, 2019. That day would be excluded, and Manivannan would have six months after January 10, 2019 to file his complaint. The last day "within six months" of January 11, 2019 was July 10, 2019.

3585573, at *4 (M.D. Pa. July 1, 2016) (complaint received and filed in the Clerk's Office one day late barred FTCA claim).

Manivannan presents no other basis to toll his claim. See ECF No. 93 at 6. Accordingly, because it is undisputed that Manivannan did not file suit by July 10, 2019 – within 6 months of the January 10, 2019 DOE denial of reconsideration – the conversion claim is time-barred. Accordingly, judgment is properly entered in Defendants' favor as to Count III of the Consolidated Second Amended Complaint.

### B. IIED Claim (Count VII)

At Count VII of the Complaint, Manivannan brings a claim for IIED that "rest[s] on [DOE's counsel's] cooperation with the state prosecutors." Manivannan, 42 F.4th at 168. Manivannan alleges that through its counsel, the agency "acted with reckless disregard for Dr. Manivannan's rights. The agency created records, then worked to, effectively, subpoena itself for purpose of disclosing those records in violation of the Privacy Act. The agency pursued criminal prosecution of an employee based on unexamined accusations. The agency's counsel became an extension of an adverse prosecutor pursuing meritless criminal claims against an agency employee." ECF No. 59 ¶ 223. Manivannan alleges that because of this conduct, he has suffered "severe emotional distress, anguish, and physical injury," requiring psychiatric care. Id. ¶¶ 224-26.

Defendants move to dismiss the IIED claim as barred by the limited scope of damages allowed under the Privacy Act and as otherwise barred by the exceptions to the FTCA's waiver of sovereign immunity. ECF No. 64 at 24-25; ECF No. 92 at 8. Manivannan responds that his IIED claim presents an alternate theory of liability that is not precluded by the FTCA. ECF No. 93 at 8-10.

Through the Privacy Act, Congress authorized recovery of "actual damages" for the improper disclosure of confidential records resulting in defamation or the invasion of personal privacy. F.A.A. v. Cooper, 566 U.S. 284, 295, 301 (2012) (citing Doe v. Chao, 540 U.S. 614 (2004) and 5 U.S.C. § 552a(g)(4)(A) (plaintiffs may recover a minimum award of $1,000 for violations of the act, but only if they prove at least some "actual damages.")). "By authorizing recovery for 'actual' but not for 'general' damages, Congress made clear that it viewed those terms as mutually exclusive." Id. at 297. The affront to the plaintiff's dignity and the emotional harm done" by defamation traditionally falls within "general damages" and is distinguished from "special damages," comprised of actual economic harm. Thus, the United States Supreme Court held that "it is reasonable to infer that Congress foreclosed recovery for nonpecuniary harm, … and instead waived the Government's sovereign immunity only with respect to harm compensable as special damages." Id. at 301. As a result, the Privacy Act precludes recovery for damages for mental distress and bars Manivannan's claim for IIED.

Manivannan appears to concede as much, but contends that his claim is properly brought under the FTCA. ECF No. 93 at 7 (citing O'Donnell v. United States, 891 F.2d 1079, 1085 (3d Cir. 1989) ("We … hold that the Federal Privacy Act of 1974 does not limit the remedial rights of persons to pursue whatever remedies they may have under the FTCA for violations of their interests in personal privacy.")). Defendants respond that even if construed solely as an alternative claim under the FTCA, the allegations of the Consolidated Second Amended Complaint fall within the Act's exceptions to sovereign immunity for intentional torts. ECF No. 92 at 8.

Section 2680(h) of the FTCA preserves sovereign immunity for "[a]ny claim arising out of … malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights …." 28 U.S.C.A. § 2680. The United States Supreme Court has

referred to this provision as the "intentional tort exception." Millbrook, 569 U.S. at 52. Defendants assert that in his various administrative claims, Manivannan presented and exhausted his IIED claim as arising from defamation. ECF No. 64 at 24 (citing ECF No. 59-7 at 5); ("In summary, NETL deliberately defamed me to destroy my career and life."); see also ECF No. 92 at 10 (citing, for example, ECF No. 92-1 at 19 ("unfounded accusations were made against me," resulting in "defamation of character," along with "false accusations [that] damaged my professional standing in the scientific community and in general society"). Defendants therefore contend that Manivannan's claim arises out of libel, slander, or misrepresentation and is barred. ECF No. 92 at 8 (citing Brumfield v. Sanders, 232 F.3d 376, 382 (3d Cir. 2000) ("defamation suits against the United States are prohibited")).

Manivannan responds that the IIED claim is not a defamation claim. ECF No. 93 at 10. Rather, he alleges "Defendants' efforts to create records and then subpoena itself, its third-world style interrogation of Manivannan with no due process, and its assistance with a baseless criminal prosecution." Id. Because his IIED claim rests on conduct "beyond simple libel or slander." Manivannan requests that the Court deny the Motion to Dismiss.

As an initial matter, the Court agrees that under Brumfield, any claim arising out of defamation or misrepresentation is barred by the intentional tort exception. In addition, in this case, the Third Circuit held that any claim arising out of the agency's internal investigation into Manivannan's conduct, including alleged "third-world style interrogation" was properly dismissed as a "precluded by the [Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 et seq.]." Manivannan, 42 F.4th at 173

> As to those claims based on the internal investigation, we are persuaded, under these specific facts, that the Magistrate Judge rightly dismissed them as precluded by the CSRA. Manivannan's complaint and its attached exhibits indicate that the internal investigation involved allegations of serious (indeed, potentially criminal)

>misconduct prompting the DOE to obtain outside counsel, place Manivannan on leave, and begin removal proceedings. These "extreme circumstances" were a "significant change in [Manivannan's] working conditions," thus qualifying as a personnel action under the statute. See Sistek v. Dep't of Veterans Affs., 955 F.3d 948, 955–56 (Fed. Cir. 2020) (distinguishing "routine" investigations, which are not personnel actions, from investigations which, "on [their] own or as part of a broader set of circumstances," comprise a significant change in working conditions); 5 U.S.C. § 2302(a)(2)(A)(xii).

Thus, dismissal is properly entered as to that portion of Manivannan's claim that relies on the DOE's internal investigation.

The rest of Manivannan's factual allegations supporting his IIED claim implicate the agency's role in assisting the prosecution of crimes flowing from his alleged misconduct. As a result, the IIED claim may "arise from" malicious prosecution or abuse of process or deceit related thereto within the FTCA intentional tort exception to the waiver of sovereign immunity. Bohnenkamp v. Whisterbarth, No. 1:19-CV-00115-RAL, 2021 WL 1600477, at *7 (W.D. Pa. Apr. 23, 2021) ("'the FTCA precludes claims of intentional infliction of emotional distress if they 'arise out' of an enumerated 'exception' under the FTCA.' McCluskey v. United States, 2010 WL 4024717, at *8 (W.D. Pa. Oct. 12, 2010) (citing Borawski v. Henderson, 265 F. Supp. 2d 475, 484 (D.N.J. 2003)); Gonzalez–Jiminez De Ruiz v. United States, 378 F.3d 1229, 1231 n. 3 (11th Cir. 2004) (stating 'if the plaintiffs' allegations of deceit are essential to their intentional infliction of emotional distress claim, we lack jurisdiction under the FTCA to entertain that claim').").

At present, Defendants seek dismissal only on the grounds that the factual allegations supporting the IIED claim arise out of defamation and therefore fall within the libel, slander, misrepresentation, or deceit exceptions. ECF No. 92 at 8. Thus, the propriety of dismissal of Manivannan's IIED claim on any other basis, including whether Manivannan sufficiently alleges the elements of IIED under Pennsylvania law, is not properly before the Court now. Under these circumstances, the Motion to Dismiss the IIED claim is granted to the extent that it is based on the

agency's internal investigation, but is denied as to alleged misconduct arising out of the agency's participation in Manivannan's criminal prosecution, subject to revisiting at the summary judgment stage of this matter.

## IV. CONCLUSION

For the foregoing reasons, judgment will be entered in Defendants' favor as to Manivannan's claim for conversion (Count III). The renewed Motion to Dismiss, ECF No. 63, will be granted in part as to the IIED claim (Count VII) for any claim arising out of the internal DOE investigation and denied in part as to Manivannan's claim arising out of the DOE's alleged improper assistance in his criminal prosecution. An appropriate Order follows.

Dated: February 8, 2023

_____
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing