**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AYYAKKANNU MANIVANNAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-297 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | Re: ECF No. 125 |
| U.S. DEPARTMENT OF ENERGY, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| AYYAKKANNU MANIVANNAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-828 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

**KELLY, Magistrate Judge**

Presently before the Court is a Motion for Summary Judgment filed on behalf of the United States Department of Energy ("DOE") and the United States of America (collectively, "Defendants"). ECF No. 125. For the reasons that follow, the Motion for Summary Judgment will be granted and judgment will be entered in favor of Defendants and against Plaintiff Ayyakkannu Manivannan ("Manivannan").[1]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed.   ECF No. 9.

## I.    INTRODUCTION

Manivannan was employed by the DOE as a materials specialist at the National Energy Technology Laboratory in Morgantown, West Virginia from 2005 to 2016. ECF No. 123 ¶ 3. Manivannan resigned his job with the DOE in June 2016 following allegations of disturbing actions that he took against a student intern. The allegations led to an internal investigation and state criminal prosecution.[2] This consolidated action represents two of several lawsuits filed by Manivannan related to those events and asserts claims arising out of the DOE's disclosure of records to state prosecutors.

## II.    PROCEDURAL HISTORY AND RELATED ISSUES

### A.  Procedural History

Manivannan initiated this action with the filing of a Complaint on March 8, 2018. ECF No. 1.  In the Complaint, he alleged violations of the Privacy Act of 1974, 5 U.S.C. § 552a(g)(1)(D) by the DOE. Id.

In July 2019, Manivannan filed a Complaint against the United States of America at Civil Action No. 19-828 at ECF No. 1. In that Complaint, he asserted claims for improperly withholding, damaging, and destroying personal property (Count I); negligence related to the investigation of his alleged misconduct (Count II), and negligence related to the violation of the Privacy Act (Count III). The two actions were consolidated in January 2020. ECF No. 37.

Following consolidation, Manivannan filed a Second Amended Complaint. ECF No. 59. He asserted seven claims for relief: disclosure of records in violation of the Privacy Act (Count I); failure to create and maintain accurate records in violation of the Privacy Act (Count II);

---

[2] See Commw. v. Manivannan, 2018 Pa. Super. 112, 186 A.3d 472 (Pa. Super. 2018).

conversion (Count III); negligence (Count IV); negligent maintenance of employment records (Count V); invasion of privacy (Count VI); and intentional infliction of emotional distress ("IIED") (Count VII). Id.

Defendants filed a Motion to Dismiss. ECF No. 63. Manivannan opposed the motion. ECF No. 71. On October 7, 2020, this Court granted the Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF Nos. 73 and 74. Manivannan appealed to the United States Court of Appeals for the Third Circuit. The Third Circuit affirmed the dismissal of Manivannan's claims that must be pursued under the Civil Service Reform Act, 5 U.S.C. § 1101 et seq. (Counts II, IV, and V, and VI), and reversed as to those claims based on the DOE's alleged cooperation with state prosecutors and failure to return Manivannan's personal property (Counts I, III, and VII). ECF No. 85-1. Specifically, the Third Circuit remanded this action for this Court to consider whether Manivannan's claims for conversion, IIED based "on [DOE counsel's] cooperation with state prosecutors," and violation of the Privacy Act can withstand grounds for dismissal previously raised by Defendants. Manivannan v. United States Dep't of Energy, 42 F.4th 163, 168, 174 (3d Cir. 2022).

Following remand, Defendants renewed their Motion to Dismiss Manivannan's claims for conversion (Count III) and IIED (Count VII). ECF No. 92, and see, ECF No. 64 at 22-25. On February 8, 2023, the Court dismissed Manivannan's claim for conversion because it is barred by the applicable statute of limitations. The Court also dismissed his claim for IIED arising out of the internal DOE investigation because that claim is precluded by the Civil Service Reform Act. ECF No. 94; Manivannan, 42 F.4th at 173. The Court denied Defendants' Motion to Dismiss as to the claim for IIED arising out of DOE's allegedly improper cooperation in his criminal prosecution.

3

Id. Thus, Manivannan's remaining claims are limited to Defendants' alleged violation of the Privacy Act, 5 U.S.C. § 552a, (Count I), and his related IIED claim challenging DOE's cooperation with state prosecutors. (Count VII).

The parties conducted fact discovery. The Court conducted a post-discovery status conference on August 28, 2023, with the participation of counsel for all parties. ECF No. 111. The Court addressed issues related to Manivannan's failure to properly respond to Defendants' discovery requests and discussed a proposed summary judgment schedule. Id., see also ECF No. 124 at 2-3 (describing Manivannan's failure to timely request discovery, timely move for the enlargement of the time allocated for discovery, his delayed and unsworn discovery responses, and his failure to identify medical providers to support his IIED claims). The Court issued a scheduling order and set dates for the filing of a Joint Statement of Undisputed Facts by October 27, 2023, motions for summary judgment to be filed by November 15, 2023, and responses to motions for summary judgment to be filed by December 15, 2023. Reply briefs, if any, were to be filed by January 5, 2024, and sur-replies by January 19, 2024. ECF No. 112. The Scheduling Order specified that any motion for summary judgment, concise statement of material facts, and response must comply with Local Civil Rule 56. Id. ¶ 6.

The parties timely filed a Joint Concise Statement of Material Facts. ECF No. 123. Defendants timely filed the pending Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and an extensive Appendix of cited exhibits. ECF Nos. 125-128.

On Saturday, December 16, 2023, at 0:00 a.m., John J. Powell, one of three attorneys identified on the docket as representing Manivannan, entered a transaction on the Case Management Electronic Court Filing ("CM/ECF") system that was "filed on 12/15/23" and

4

identified as a "Brief in Opposition re [125] Motion for Summary Judgment." ECF No. 129. Contrary to the description, the filing consists of unindexed emails between Manivannan and the student intern he allegedly harassed and with whom had an improper relationship, a few emails between Manivannan and other DOE employees concerning the student intern, and telephone records. Id. at 3-408.

On Tuesday, December 19, 2023, the Clerk of Court issued a Quality Control Message informing counsel that the "Incorrect Document [was] attached" at ECF No. 129 and directed Manivannan's counsel "to refile the document using the Errata event and attach the correct document." Mr. Powell failed to comply with the Clerk's direction and waited until Wednesday, December 20, 2023, to call the Court. He explained that he was having computer issues. Chambers staff advised Mr. Powell to file a motion for leave to file any documents related to the pending Motion for Summary Judgment. Counsel failed to do so.

On January 5, 2024, Defendants filed a Reply Brief solely to address Manivannan's failure to file a brief in opposition to their pending Motion for Summary Judgment, failure respond to Defendants' Concise Statement of Facts, and his submission of "408 pages of material produced in discovery, … without explanation, context, or even a cover page…." ECF No. 130 at 2. Defendants preemptively raised Manivannan's failure to seek leave to file a response to the Motion for Summary Judgment and the necessity that he address the factors set forth in Pioneer Inv. Servs. Co. v. Brunsick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993),  upon which a motion for leave to file after a deadline must rest. Defendants also argued that Manivannan's failure to comply with the requirements of Local Civil Rules 56.C and 56.E, results in the deemed admission of all material facts asserted by Defendants in their Concise Statement of Material Facts. Id.

Two weeks later, Manivannan filed a "Sur-Reply Brief in Opposition to Defendants' Motion for Summary Judgment." ECF No. 131. The Sur-Reply did not include a motion for leave to file a brief in opposition to the Motion for Summary Judgment and did not address the <u>Pioneer</u> factors. Thus, without leave of Court, Manivannan presented substantive arguments in opposition to Defendants' Motion for Summary Judgment and relied in part on exhibits that have never been filed. <u>See</u> <u>id.</u> at 3 *n*.3.

The Court issued an Order to Show Cause why the Sur-Reply should not be stricken because the substantive response to the Motion for Summary Judgment was filed without leave and was beyond the scope of the DOE's Reply Brief. ECF No. 132. The Court set February 5, 2024, as the due date for Manivannan's response.

At 11:58 p.m. on February 5, Mr. Powell filed a Declaration in Response to the Order to Show Cause. ECF No. 133. In his Declaration, Mr. Powell states that during the Fall of 2023, he prepared a set of 230 exhibits that he anticipated filing with a responsive brief. <u>Id.</u> at 2. However, due to "significant personal and professional travel," including a vacation to Portugal, he used an external hard drive to save the exhibits. The exhibits included psychiatric records that the parties agreed in August 2023 to file under seal, subject to a motion for a protective order. Mr. Powell states he completed a draft of the Brief in Opposition by December 14 and in the morning of December 15, sought Defendants' consent to a proposed protective order and motion to file exhibits under seal. Defendants' counsel responded that he was unavailable to review the proposed order that day, and Mr. Powell began preparing a motion to file under seal. <u>Id.</u> at 3.  Mr. Powell says he completed the brief in opposition to Defendants' motion at 7:00 p.m. and logged in to file the prepared documents. He was "unable to access Plaintiff's exhibits or any other data on the

external hard drive." Id. at 4. He "considered" a motion for leave for an extension of time, but "found it impossible to adequately set forth and explain within the remaining time the circumstances giving rise to the motion." Id. About five hours later and in lieu of a motion, he filed exhibits he says were produced in discovery by the DOE in March 2023, and identified the filing as his "brief" in opposition. Id.

Mr. Powell asserts that he began work to recreate his exhibit file and hoped to file a motion for leave to file his opposition to the pending motion early the next week. ECF No. 133. Rather than contact the Court the next business day on Monday, December 18, Mr. Powell waited until Wednesday, December 20, to advise the Court that he had a technical issue. He was instructed to file a motion for an extension of time. Mr. Powell states he cancelled family plans and continued working on the exhibits. On December 28, he tested positive for COVID-19 and his father fell seriously ill on January 1, 2024. ECF No. 133. He did not notify the Court of his continuing technical difficulties or his medical and family emergencies, and co-counsel did not do so on his behalf.  Mr. Powell states that by the time he returned to the matter, a motion for leave under Federal Rule of Civil Procedure 6 "no longer appeared to be an appropriate request." Id. at 5. Instead, he filed a Sur-Reply that he represents is based "solely" on the record already before the Court. Id. at 6. After having abandoned his responsibilities as required by the Case Management Order and Local Civil Rule 56, Mr. Powell adds that based on his "understanding," the Court must still determine whether entry of summary judgment is warranted "on the merits." Id.

Counsel's course of conduct raises two issues for this Court to address before turning to the merits of the pending Motion for Summary Judgment: first, whether the Court can consider the

"Sur-Reply" and, second, whether under the Local Civil Rules, all facts set forth in the Defendants' Concise State of Material Facts are deemed admitted.

### B.  Consideration of the Sur-Reply

Federal Rule of Civil Procedure 6(b)(1)(B) allows the Court to extend a filing deadline "on motion made after the time has expired if the party fails to act because of excusable neglect." Before permitting or excluding an untimely filing, the District Court must, after a formal motion is filed, decide whether there was excusable neglect. See Drippe v. Tobelinski, 604 F.3d 778, 785 (3d Cir. 2010) (citing Pioneer, 507 U.S. at 395). "Under Pioneer, the excusable neglect inquiry must consider 'all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice ..., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" Id. (quoting Pioneer, at 385, and citing In re O'Brien Env't. Energy, Inc., 188 F.3d 116, 125 n. 7 (3d Cir. 1999) (holding that Pioneer factors apply to all excusable neglect inquiries mandated under the Federal Rules of Civil Procedure)).

Given Mr. Powell's reliance on Rule 56(e) to address the substance of DOE's arguments, the Court does not have a motion before it to determine whether the Pioneer factors support consideration of Manivannan's Sur-Reply. See Drippe, 604 F.3d at 783 ("absent a motion," "[t]here is no discretion to grant a post-deadline extension."); see also Talley v. Wetzel, No. 21-1855, 2022 WL 3712869 (3d Cir. Aug. 29, 2022) (nonprecedential disposition) (same). That said, based on the contents of Mr. Powell's Declaration and the failure of his co-counsel to file an appropriate motion for extension of time in Mr. Powell's absence, the Court has no difficulty concluding that an extension would not be warranted.

In terms of prejudice, by filing a primary brief in opposition to summary judgment via Sur-Reply, Manivannan's counsel denied Defendants an opportunity to file a substantive reply without first seeking leave of court. While the resources required for the DOE to file such a motion are not vast, they do represent a cost demanded only by the ongoing lack of diligence on the part of Manivannan's counsel. Even when the danger of prejudice is low, "it 'will not suffice if no excuse at all is offered or if the excuse is so threadbare as to make the neglect inexplicable.'" Bowman v. Korte, 962 F.3d 995, 998 (7th Cir. 2020) (quoting United States v. McLaughlin, 470 F.3d 698, 700–01 (7th Cir. 2006)), cited with approval in Talley, at *2 *n*.6. Such is the case here. Counsel was aware of the due date of his response for four months and was aware of computer issues for several hours. Yet, he failed to seek an extension of time or enlist the aid of co-counsel to do so for him.

The Court also finds that counsel for Manivannan did not act in good faith. Good faith may be found when a party acts with "reasonable haste to investigate [a] problem and to take available steps toward a remedy." In re Cendant Corp. PRIDES Litig., 235 F.3d 176, 184 (3d Cir. 2000) (finding no bad faith in assessment of excusable neglect when party corrected error within three business days). Mr. Powell could have requested that either of his two co-counsel file a motion for an extension of time on December 15 or, at the latest, on December 18, citing Mr. Powell's presumably verifiable computer problems. Their failure to do so then (or at all) renders suspect Mr. Powell's litany of excuses for not filing a motion for extension of time over the next four weeks. Mr. Powell also attests that the primary brief in opposition was completed on December 14 and ready to be filed on December 15. He does not assert that the brief was part of the "corrupted" exhibits on his hard-drive and thus it is inexplicable that the brief was not filed or, if

"corrupted", that leave of Court was not sought to extend the filing deadline.   Under these circumstances, the Court does not find excusable neglect to permit consideration of Manivannan's Sur-Reply.

Separately, the Court finds Manivannan's brief exceeds the proper scope of a Sur-Reply, because it does not address any argument raised for the first time (or at all) in Defendants' Reply Brief.  See, e.g., Geib v. James, No. 04-1923, 2007 WL 2595423, at *9 (M.D. Pa. Aug. 31, 2007) ("The purpose of a sur-reply is to address any new issues or legal bases which are asserted for the first time in a reply brief and which Plaintiff would not have had a prior opportunity to address."); Kabbaj v. Simpson, No. 12-1322, 2013 WL 867751, at *6 (D. Del. Mar. 7, 2013), *report and recommendation adopted*, 2013 WL 1405948 (D. Del. Apr. 8, 2013) (citations omitted) ("[t]he purpose of a sur-reply is 'to address any new issues or legal bases which are asserted for the first time in a reply brief,' not to allow similar arguments repetitive of prior arguments in the answering brief, or could have been raised in the answering brief").

For these reasons, the Court will not consider the arguments raised by Manivannan in the Sur-Reply, filed without leave of Court and without addressing or satisfying the requisite Pioneer factors.

### C.  Local Civil Rule 56.1

Local Civil Rule 56 requires a party opposing summary judgment to file a response to a concise statement of material facts in which the nonmovant: (1) admits or denies "whether each fact contained in the moving party's Concise Statement is undisputed and/or material"; (2) sets forth "the basis for the denial if any fact contained in the moving party's Concise Statement is not admitted in its entirety ... with appropriate reference to the record"; and (3) sets forth, "in separately

numbered paragraphs any other allegedly material facts that are allegedly at issue." LCvR 56. C.1(a)–(c). In this case, this Court specifically instructed the parties that compliance with Local Rule 56.1 was required. ECF No. 112 ¶ 6. Yet, as asserted by DOE, Manivannan failed to do so.

Courts in this District generally require "strict compliance" with Local Civil Rule 56. Mattis v. Overmeyer, Case No. 1:16-cv-00306, 2019 WL 2542283, at *2 (W.D. Pa. June 20, 2019) (collecting cases). When a party fails to comply with LCvR 56, "[a] [c]ourt [is] 'entitled to deem [Defendants'] statement of facts as admitted[.]'" Deforte v. Borough of Worthington, 364 F. Supp. 3d 458, 461 n.3 (W.D. Pa. 2019) (quoting Smith v. Addy, 343 F. App'x 806, 808 (3d Cir. 2009)). See also Byron v. Columbia Gas of Pennsylvania, No. 21-01365, 2022 WL 17406052, at *1 (W.D. Pa. Dec. 2, 2022), aff'd, No. 22-3408, 2023 WL 8663876 (3d Cir. Dec. 15, 2023); Polansky v. Vail Homes, Inc., No. 13-296, 2016 WL 2643253, at *4 (W.D. Pa. May 10, 2016) (citing Janokowski v. Demand, No. 06-0618, 2008 WL 1901347, at *1 (W.D. Pa. Apr. 25, 2008) (defendant's statement of material facts were deemed admitted for the purpose of summary judgment because of the plaintiff's violation of Local Rule 56.1(c)); GNC Franchising LLC v. Kahn, No. 05-1341, 2008 WL 612749, at *1 (W.D. Pa. Mar. 3, 2008) (the facts set forth in plaintiffs statement of facts were deemed admitted by defendants based on defendants' violation of Local Rule 56.1(E)); Ferace v. Hawley, No. 05-1259, 2007 WL 2823477, at *1 (W.D. Pa. Sept. 26, 2007) (citing Benko v. Portage Area Sch. Dist., No. 03-233J, 2006 WL 1698317 (W.D. Pa. June 19, 2006)).

Therefore, as the result of Manivannan's failure to respond as required by Local Civil Rule 56.1(c), all facts set forth in Defendants' Concise Statement of Material Facts are deemed admitted.

Having reviewed and addressed the above procedural issues, Defendants' Motion for Summary Judgment is ripe for consideration.

### III.    FACTUAL BACKGROUND

The DOE is a federal agency that oversees the work of 17 national laboratories, including the National Energy Technology Laboratory ("NETL") in Morgantown, West Virginia.[3] Manivannan was employed by the DOE to work as a materials specialist at NETL from 2005 to 2016. ECF No. 123 ¶¶ 1, 2.

On July 30, 2014, the Centre County Court of Common Pleas issued a temporary Protection for Abuse Order against Manivannan, which was made final on August 12, 2014. ECF No. 127 ¶¶ 1, 2. The Order forbid Manivannan from contact with a DOE former student intern, her intimate partner, or her immediate family, and directed that he was not to abuse, stalk, harass or threaten, or use electronic media to make any remarks about her. ECF No. 128-5. The Order did not expire until August 12, 2017. Id.

On March 19, 2015, Jessica B. Meyer, an officer with the Pennsylvania State University Police, filed a criminal complaint against Manivannan in Centre County and charged him with one first-degree misdemeanor count of stalking and one third-degree count of harassment. ECF No. 123 ¶¶ 3, 4. The criminal complaint included an affidavit of probable cause. Id. ¶ 5.

Three months after the criminal proceedings began, the DOE engaged Marissa Williams as outside counsel to conduct a "Management-Directed Inquiry" ("MDI") into Manivannan. Id. ¶ 6. The basis of the internal investigation was allegations of serious, potentially criminal, misconduct directed at a former DOE student intern. ECF No. 127 ¶ 4. Williams interviewed Manivannan during her investigation. ECF No. 123 ¶ 7. The MDI resulted in the issuance of an

---

[3] The facts derive from the parties' Joint Statement of Undisputed Facts, ECF No. 123, Defendants' Concise Statement of Material Facts, ECF No. 127, and exhibits filed with these documents.

Investigation and Report entitled "Confidential Management Directed Inquiry into Allegations Against Ayyakkunnu Manivannan," dated January 8, 2016. Id. ¶ 8.

On January 14, 2016, a Criminal Information was filed in a second criminal action against Manivannan in Centre County, charging him with five felony counts of unlawful use of a computer, related to the unauthorized use of the student intern's private email account. Id. ¶ 12.

Mark Hunzeker, an attorney with NETL, communicated with the assigned Pennsylvania State University Police Officer by telephone and email, including a telephone call that occurred in late 2015 or early 2016. Id. ¶ 9. Hunzeker received a copy on the MDI in January 2016 and called Megan McGoran, the assigned Assistant District Attorney, to request "a copy of the DA Office's investigation, in case it might be useful for future anticipated administrative proceedings with Manivannan." ECF No. 127 ¶ 7. Hunzeker told McGoran that NETL's investigation included travel documents and documents related to Manivannan and to his use of DOE computers. ECF No. 123 ¶ 11.

On March 10, 2016, McGoran sent Hunzeker an email with a subpoena directed to the DOE Documents Custodian. Id. ¶ 13. The subpoena is in the form of a court order, witnessed by the President Judge of the Court of Common Pleas of Centre County, and signed by the Prothonotary, and states:

> You are ordered by the court to come to The Centre County Courthouse, Courtroom No. 1 at Bellefonte, Pennsylvania on 3/17/2016 at 8:00 A.M. to testify on behalf of The Commonwealth in the above captioned case and to remain until excused.
>
> And bring with you the following: Any and all agency records between June 2014 and July 2014 reflecting any official travel and/or other time and attendance data for that time frame for employee Ayyakkannyu Manivannan, any and all official electronic communication between employee Ayyakkannuu Manivannan and intern [   ] from January 2014 through August 2014 including emails, IP addresses,

text messages and phone calls using Department of Energy issued equipment provided to Ayyakkannu Manivannan or [intern].

ECF No. 128-8 at 3. A warning appears below the Prothonotary signature that "[i]f you fail to attend or to produce the documents or things required by this Subpoena, you may be subject to the sanctions authorized by Rule 234.5 of the Pennsylvania Rules of Procedure, including, but not limited to, costs, attorney fees, and imprisonment." Id.

Hunzeker collected responsive documents, some by himself, and some by asking other DOE employees. ECF No. 127 ¶ 9. Based on his years of experience as an attorney for the federal government, Hunzeker was aware that disclosure of records pertinent to an existing state law enforcement action to state prosecutors fell within a routine use under the Privacy Act. Id. ¶ 10 (citing Hunzeker deposition). On March 16, 2016, Chief Counsel for NETL sent documents to McGoran in response to the subpoena. ECF No. 123 ¶¶ 14, 15. The response was sent with a letter advising that "[w]hile a state court subpoena is ineffective against an officer or agency of the United States due to its sovereign immunity, … the DOE is providing the requested records as a matter of comity." ECF No. 128-9 at 2.

Manivannan's criminal jury trial was held on April 18 and 19, 2016. ECF No. 123 ¶ 16. Trial exhibits included Manivannan's Time and Attendance Report. The Report established that he was traveling on DOE business for the week of June 29, 2014, through July 5, 2014. In addition, exhibits at trial included related travel authorizations, copies of receipts and invoices for hotel and rental car reservations, Manivannan's DOE cell phone records, and emails sent by or to him using his DOE email address. Id. ¶¶ 20-27; ECF No. 127 ¶¶ 13-18. This evidence supported the student intern's testimony that emails containing sexual content had been sent to members of her family

14

from her personal email account without her knowledge. "Upon investigating her email account settings, particularly her account history, [the student intern and her partner] discovered that from June 22, 2014, to July 18, 2014, her account was accessed twenty-one times from thirteen different Internet Protocol ("IP") addresses located in," among other places, Morgantown, WV, and Los Angeles, CA. Commw. v. Manivannan, 186 A.3d at 476-77. Prosecutors introduced evidence to establish that the access attempts from Morgantown were linked to Manivannan's home address. Id. In addition, Manivannan's supervisor testified that Manivannan was in Los Angeles during the week of June 29 to July 6, 2014, which coincided with access attempts from that location.

At the end of trial, Manivannan was acquitted of the stalking charge and convicted of the unlawful use of computer charges and the harassment charge. ECF No. 123 ¶ 28. Manivannan appealed and the Pennsylvania Superior Court vacated the convictions, finding that the trial court erred when it allowed the prosecution to establish "the connection between IP addresses and real-world locations" using lay, rather than expert testimony. Commonw. v. Manivannan, 186 A.3d at 488. After remand, the trial court entered a nolle prosequi at the request of the Centre County District Attorney's Office based, in part, on the adverse effects on the victim of continued proceedings. ECF No. 128-13 at 2.

On June 16, 2016, Manivannan submitted his resignation letter to the DOE. This ended the DOE's employment removal proceedings against Manivannan before a decision was reached on the merits of the charges against him. ECF No. 123 ¶ 30. Manivannan then commenced this litigation against the DOE, as well as other litigation against Pennsylvania State University, the Centre County District Attorney, the investigating officer, the student intern, and her partner. See Manivannan v. Cnty. of Centre, PA, et al., No. 4:21-cv-1359 (M.D. Pa.) (ECF No. 30). He also

launched an administrative proceeding to challenged alleged adverse employments action. An administrative law judge presided over a three-day hearing and determined that the internal investigation into the student intern's allegations was supported by sufficient evidence and that his proposed removal was not retaliatory. Manivannan v. Dep't of Energy, No. PH-1221-18-0230-W-3, 2020 WL 1120149 (M.S.P.B. Apr. 8, 2020), aff'd, No. 20-1801, 2021 WL-4735304 (Fed. Cir. Oct. 12, 2021) (per curiam).

As earlier explained, Manivannan has not filed a brief in opposition to the pending Motion for Summary Judgment that the Court may consider. Thus, the motion is ripe.

## IV.   STANDARD OF REVIEW

Summary judgment is properly entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). Further, "[a] dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" Clews v. Cnty. of Schuylkill, 12 F.4th 353, 358 (3d Cir. 2021) (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating to the court that the undisputed evidence is not enough to support one or more essential elements of the non-moving party's

claim. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted). In making this assessment, the court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. New Jersey Dep't of Mil. & Veterans Affs., 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322–23; Jakimas v. Hoffman La-Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## V. DISCUSSION

Defendants move for summary judgment because the records disclosed are not records within the scope of the Privacy Act or were disclosed in accordance with a statutory exception. ECF No. 126. Defendants also contend that under the circumstances of the disclosure and the preexisting ongoing criminal proceedings against him, (1) Manivannan has not established and cannot establish that he sustained "actual damages" as the result of any alleged unauthorized

17

disclosure of a record covered by the Privacy Act, and (2) Manivannan cannot satisfy the requirement of an "intentional and or willful" disclosure required to support an award of money damages under the Privacy Act. Finally, Defendants assert that the undisputed evidence would not permit a reasonable factfinder to find intentional or outrageous conduct sufficient to support an IIED claim.

### A.   Privacy Act

Congress enacted the Privacy Act "[i]n order to protect the privacy of individuals identified in information systems maintained by Federal agencies[.]" The Privacy Act "regulate[s] the collection, maintenance, use, and dissemination of information by such agencies." Doe v. Chao, 540 U.S. 614, 618 (2004) (citing Privacy Act of 1974, § 2(a)(5), 88 Stat. 1896). "In addition to establishing certain requirements relating to the collection and maintenance of such records…, and the publication of notice of the of the existence of such records, …" Britt v. Naval Investigative Serv., 886 F.2d 544, 546 (3d Cir. 1989), the Privacy Act "prohibits agencies from disclosing records contained in a system of records except pursuant to a written request by, or with the written consent of, the individual to whom the record pertains." Bansal v. Pavlock, 352 F. App'x 611, 613 (3d Cir. 2009) (citing 5 U.S.C. § 552a(b)).  In the event of an intentional or willful violation that has an adverse effect on an individual, the Privacy Act permits a civil action for recovery of actual damages. 5 U.S.C. §§ 552a(g)(1)(D) and 552a(g)(4).

"To maintain a suit for damages under the catch-all provision of 5 U.S.C. § 552a(g)(1)(D) for a violation of the Act's central prohibition against disclosure, § 552a(b), a plaintiff must advance evidence to support a jury's finding of four necessary elements: (1) the information is covered by the Act as a 'record' contained in a 'system of records'; (2) the agency 'disclose[d]'

the information; (3) the disclosure had an 'adverse effect' on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was "willful or intentional." Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992).

Manivannan alleges that his rights under the Privacy Act were violated when the DOC produced documents and information derived from his DOE email account, DOE time and attendance records, and DOE telephone records to the Centre County District Attorney for use at the trial of his criminal charges. ECF No. 59 ¶ 8.

Defendants assert that summary judgment is properly entered as to all remaining Privacy Act and state-law claims because the disclosures at issue were proper for the following reasons.

(1) For the bulk of records allegedly disclosed improperly, Manivannan has failed to identify a "record" retrieved from a "system of records."

(2) DOE's production of documents falls within statutory exceptions to the Privacy Act including: (a) a disclosure of records "for a routine use," § 552a(b)(3); (b) a disclosure for authorized civil or criminal law enforcement, § 552a(b)(7); and (c) a disclosure pursuant to the order of a court of competent jurisdiction, § 552a(b)(11). Therefore, the Privacy Act does not apply to the challenged disclosure.

(3)  Manivannan cannot show an "intentional and willful violation" of the Privacy Act.

(4) Manivannan cannot show that he sustained "actual damages" because of an unauthorized disclosure of a Privacy Act record.

Before reaching the cited exceptions to the Privacy Act and the lack of evidence of intentional or willful conduct necessary to support a claim, the Court briefly addresses DOE's initial arguments that the disclosures did not involve "records" within a "system of records."

### 1. "Retrieval" from a "system of records"

Defendants argue that summary judgment is properly entered because Manivannan has not established that the documents from his DOE email account and receipts and documents related to his official DOE travel are "records" within the scope of the Privacy Act or were "retrieved" from "a system of records.".

The Privacy Act defines "record" as:

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph[.]

5 U.S.C. § 552a(a)(4). The Act further defines a "system of records" as:

> a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual[.]

5 U.S.C. § 552a(a)(5).

In Quinn, *supra*, the Third Circuit held that the statutory definition of "record" has "a broad meaning encompassing *any* information about an individual that is linked to that individual through an identifying particular and is not to be restricted to information that reflects a characteristic or quality of an individual …. [and] is consistent with the thrust of the statutory definition." Quinn, 978 F.2d at 133 (emphasis in original). The definition "can … consist of a single piece of information, it may also be a collection or grouping of pieces of information." Id.

The information will be protected "if that piece of information were linked with an identifying particular (or was itself an identifying particular) and maintained within a system of records." Id. Following the interpretation in Quinn, the Court finds that Manivannan's emails, travel records, and time and attendance records that contain information about him as well as his name or his email address (and thus an identifying particular) meet the first prong of the definition of "records."

Manivannan must also establish that the documents were maintained and retrieved from a "system of records." Id. DOE argues that (1) the emails were not maintained in a system of records; (2) travel and telephone records were either "not actually retrieved from a Privacy Act 'system of records," or the disclosures fall within an exception to the Act; and (3) information related to dates of travel and work attendance was available at trial from an independent source and thus retrieval from a system of records did not cause harm. ECF No. 126 at 21-22.

### a. Emails

Defendants contend that Manivannan has presented no evidence to establish that DOE maintains a "published 'system of records' that relates to internal agency emails." ECF No. 126 at 21 (citing ECF No. 127 ¶¶ 25-28). On this basis alone, DOE seeks summary judgment. Id. (citing Shope v. Dep't of Navy, No. 09-2400, 2010 WL 2766638, at *1, *3 (M.D. Pa. July 13, 2010)) (plaintiff's Privacy Act claim was dismissed because he failed to present any evidence that an email sent by his former federal employer to plaintiff's private sector employer concerning plaintiff's desire to return to federal employment was "contained in a 'system of records'"). DOE points to the Declaration of its Chief Privacy Officer and Deputy Chief Information Officer for Enterprise Records Management, Privacy & Compliance, who states that DOE and NETL emails are not retrieved from a Privacy Act identified "system of records." Id. (citing ECF No. 127 ¶ 25,

in turn citing ECF No. 128-1)). Instead, the emails that were produced by the DOE in Manivannan's criminal case were stored in NETL's Microsoft 0365 tenant, which serves as NETL's repository for electronic message/email traffic. ECF No. 128-1. This database is not identified as a DOE System of Records.[4] Thus, Defendants assert that Plaintiff cannot establish a Privacy Act violation arising from the disclosure of emails. ECF No. 126 at 20-21.

Upon review, DOE's Publication of Compilation of Privacy Act Systems of Records lists roughly sixty active DOE Systems of Records. See *n*.4. DOE does not identify its email repository as an independent system of records. Even so, emails are referred to within DOE systems of records as retrievable by an individual's name or email address. See, e.g., DOE-84 (Counterintelligence Investigative Records), 74 Fed. Reg. at 1085-86 (specifying that records in the system include "electronic mail stored on electronic media").

Courts have held that the *capability* to retrieve a document stored by an agency by a person's name is not alone sufficient to find a system of records. Rather the record "must ... *in practice* [be] retrieved by an individual's name or other personal identifier." Henke v. U.S. Dep't. of Com., 83 F.3d 1453, 1460-61 (D.C. Cir. 1996) (quoting Bartel v. F.A.A., 725 F.2d 1403, 1408 *n*. 10 (D.C. Cir. 1984) (emphasis in original)). The district court in House v. U.S. Dep't of Just., 197 F. Supp. 3d 192 (D.D.C. 2016) explained this distinction as follows:

> The Court, nonetheless, concludes that the email archive falls beyond the ambit of the Privacy Act. As at least two other judges of this Court have explained, the Privacy Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual," 5 U.S.C. § 552a(a)(5), and the Criminal Division's email archive is "not indexed by personal identifier," Gordon[ v. Courter, 118

---

[4] See ECF No. 128-1 at  6 (citing https://www.federalregister.gov/documents/2009/01/09/E8-31316/privacy-act-of-1974-publication-of-compilation-of-privacy-act-systems-of-records ). A PDF version of the publication appears at https://www.govinfo.gov/content/pkg/FR-2009-01-09/pdf/E8-31316.pdf

F.Supp.3d 276, 290–91 (D.D.C. 2015)]; <u>Campbell [v. United States Dep't of Justice</u>, 133 F. Supp. 3d 58, 69 (D.D.C. 2015)]. <u>See also</u> Dkt. 7–1 at 6 (Sprung Decl. I ¶¶ 19–20) (describing email archive); <u>Mobley [v. C.I.A.</u>, 806 F.3d 568, 587 (D.C. Cir. 2015)](holding database of "e-mail traffic to and from other intelligence agencies" was not a "system of records" because the agency "'does not organize records in [the ... database] by individuals who may be mentioned in those records, nor does [it] retrieve records about individuals from that database by use of an individual's name or personal identifie[r] as a matter of practice.'"); <u>Krieger v. U.S. Dep't of Justice</u>, 529 F. Supp. 2d 29, 42–43 (D.D.C.2008) (explaining that fact that emails could be searched by name or other identifier was insufficient to render them a "system of records" within the meaning of the Privacy Act).

<u>Id.</u> at 210.

In this case, neither party has established whether or how emails records are organized and retrieved when needed. But, as reflected in DOE's Compilation of Privacy Act Systems of Records, emails are stored and may be retrieved by use of an individual's name or email address for a specific purpose, such as counterintelligence. Thus, despite Manivannan's failure to proffer evidence related to DOE's maintenance of emails in a system of records, the Court finds that based on information published by the DOE, there are issues of fact that preclude entry of judgment for the DOE based on its construction of the term "system of records." <u>See</u> <u>Bowyer v. U.S. Dep't of Air Force</u>, 804 F.2d 428, 431-31 (7th Cir. 1986) (fact issues existed as to whether supervisor's memo was a "record" within a "system of records" subject to Privacy Act despite claim that it was "private note" in an unlabeled file, where it related to plaintiff by reference to his name and other employees were aware of file's existence).

### b.  Travel Records

DOE asserts that Manivannan's car rental and hotel receipts were not actually retrieved from a Privacy Act "system of records," and that retrieval and disclosure of other travel records from DOE's Official Travel Records fell within exceptions for a routine use, investigating a

violation or potential violation of law, and pursuant to a court order. ECF No. 126 at 21. The evidentiary record does not reflect how hotel and car receipts were retrieved or where they were maintained. That said, DOE's System of Records Notice ("SORN") for Official Travel Records lists travel receipts within the categories of records maintained in the system. ECF No. 128-14 at 10 (DOE-26). Thus, the Court declines to grant summary judgment for DOE based on the contents of its system of records.

### 2. Waiver

In the alternative, Defendants contend that email records fall outside the scope of the Privacy Act because DOE instructs all employees that there is no expectation of privacy while using DOE resources, "including when accessing the internet or using e-mail." ECF No. 126 at 21 (citing ECF No. 127 ¶¶ 26-28). A similar waiver was at issue in Bansal, *supra*, where a federal prisoner asserted that his Privacy Act rights were violated when the Bureau of Prisons ("BOP") disclosed his recorded telephone calls for use in a criminal proceeding. Upon entry into a BOP facility, all prisoners sign a form acknowledging that telephone calls would be monitored and recorded, and thus there is no expectation of privacy. During the plaintiff's criminal trial, the BOP produced the recorded telephone calls pursuant to a Government-issued subpoena and the contents of the recordings were described by a case agent. The district court entered summary judgment for the defendants on the plaintiff's Privacy Act claims because the disclosures fell within the "routine use" exception to the Act, specifically, for disclosures to law enforcement officials for law enforcement purposes. Bansal v. Pavlock, No. 07-703, 2008 WL 11450437 (E.D. Pa. Aug. 19, 2008). Summary judgment was affirmed on appeal because the disclosure was within a routine use of the Bureau of Prisons and compatible with the purpose of the system of records — to ensure

that inmates exercise their telephone privileges in a manner consistent with correctional goals and to investigate suspected illegal activities. Id. at 613-14 (citing 5 U.S.C. § 552a(a)(7)); see also Bansal, 2008 WL 11450437, at *3. Thus, the express waiver of any expectation of privacy was not sufficient to find in favor of the government. Instead, the plaintiff's claims failed because the disclosure fell within statutory exceptions to the Privacy Act.  In this instance, the Court similarly resolves Manivannan's claims pursuant to the statutory exceptions for routine use, law enforcement, and disclosure pursuant to a court order.

### 3.  Exceptions to the Privacy Act

#### a.  Routine Use

There are two requirements for "routine use" disclosures. First, "[a] 'routine' use is defined in section 552a(a)(7) as 'the use of such record for a purpose which is compatible with the purpose for which it was collected.'" Britt v. Naval Investigative Serv., 886 F.2d at 547. This requires "some meaningful degree of convergence … between the disclosing agency's purpose in gathering the information and in its disclosure." Id. at 549. Second, "a disclosure cannot be authorized under the routine use exception unless the disclosing agency publishes annually in the Federal Register a notice describing 'each routine use of the records contained in the system, including the categories of uses and the purpose of such use.' 5 U.S.C. § 552a(e)(4)(D)." Id.

SORN DOE-26 and SORN DOE-13 set forth a "routine use" authorization for the disclosure of travel and attendance records "to the appropriate local, State or Federal agency when records, alone or in conjunction with other information, indicates a violation or potential violation of law whether civil, criminal, or regulatory in nature, and whether arising by general statute or particular program pursuant thereto." 74 Fed. Reg. at 1012, 1027. As to compatibility, SORN

DOE-13 provides that attendance records are contained in DOE's Payroll and Leave Records system of records to "document historical information on employee wages, deductions, retirement benefits, and leave." Id. at 1013. Travel records including "travel itinerary, advance amount, expenses claimed, amounts reimbursed, charge card account numbers, residential sales records, and receipts" are contained in DOE's Official Travel Records system of records and are "maintained and used by DOE to document official domestic and foreign travel." Id. at 1026-27.

Compatibility was absent in Britt, where records of an internal investigation into potential illegal conduct by a Marine Corps Reserve officer were improperly disclosed by the investigator to the plaintiff's full-time federal employer. 886 F.2d at 546. The published list of routine uses permitted disclosure of investigation reports "[t]o other investigative units (federal, state or local) for whom the investigation was conducted, or who are engaged in criminal investigative and intelligence activities; federal regulatory agencies with investigative units." Id. at 547. The government relied on the last clause, which permitted disclosure to any federal agency with an investigative unit. The Third Circuit found that this clause was unconnected to the permissible investigative and intelligence activities identified in the preceding clause and was so broad as not to give notice as to what information could be released and the purpose of the use.

In Britt, the investigators argued that the disclosure to an outside agency was to ensure that the plaintiff's employer knew that the plaintiff was the subject of an investigation. Id. at 549. At the time, the plaintiff's employer was *not* conducting a criminal investigation of plaintiff, but the agency argued "that the information 'could have had a bearing on [plaintiff's] specific job' …. In other words, the [agency] released the information to [plaintiff's employer] because it believed that [the employer] might find it relevant to have information suggesting a lack of integrity in his

subordinate." Id. at 549. The Third Circuit found that "relevance" did not meet the restrictive standard of compatibility set forth by Congress in the routine use exception. Id.

Here, the Court concludes that the disclosure of Manivannan's attendance and travel records to the Centre County District Attorney's Office for its preexisting and active prosecution satisfies both prongs of the routine use exception. First, the routine use is adequately described in the Federal Register and expressly permits disclosure to state agencies when the information "in conjunction with other information indicate[s] a violation or potential violation of law…" 74 Fed. Reg. at 1027. Second, as to compatibility, DOE's disclosure confirmed Manivannan's attendance at work and the locations of his official travel for an active state prosecution arising out of his alleged criminal activities while traveling for DOE business. In this respect, the Court finds persuasive the dissent of Judge Nygaard in Quinn, supra.

The Third Circuit in Quinn ruled that routine use was not properly before it because the parties had failed to raise the issue before the district court. In dissent, Judge Nygaard explained that he would have found the claim barred by the routine use exception because the disclosure of a time card to state wildlife conservation investigators fell within a published routine use for investigation of a potential violation of law.

> In general, the main reason time cards are collected is to determine employees' work hours in order to compute payroll. It is not to collect information about an employee which can be used against him in a criminal investigation.

> Nonetheless, the main purpose for which time cards are collected certainly is not the only purpose. One of the reasons time card information is collected is to find out if an employee was at work on a given day—the precise reason for which it was used in this case. LEAD disclosed information on Merritt's time card precisely for this purpose.

> In addition, work schedule information about an employee typically would be useful for investigations that require knowing the employee's whereabouts on the

day the employee claimed to be not working. If an investigator legitimately suspects an employee may have tried to deceive the government about not being at work on a given day, the government would disclose time card information that would help determine whether indeed the employee lied. Hence, even if the time record was not specifically collected for crime prevention or investigation, I believe it is available as evidence in a legitimate criminal investigation, because the disclosure is being made for a reason compatible with that for which it was originally collected—as evidence of whether and when she worked. To hold otherwise could potentially bar valuable federal agency information or facts about a person from being used as evidence by non-agency criminal investigators unless crime prevention was the main purpose for collecting the information in the first place.

Quinn, 978 F.2d at 139.

In this case, the disclosure of Manivannan's time and attendance records to the Centre County District Attorney is compatible with the defined routine use – to verify the dates and locations of Manivannan's work-related travel in aid of a state criminal investigation. The disclosed data, when combined with other information from the student intern's complaint and the investigation conducted by police, was used to determine whether Manivannan should be prosecuted for conduct while using a DOE-issued email address and computer resources to cyber-stalk and harass a DOE student intern while traveling on DOE official business.   Under these circumstances, DOE's disclosure of Manivannan's travel and attendance records falls within the routine use exception to the Privacy Act. Therefore, the Motion for Summary Judgment is properly granted in favor of DOE as to all claims arising out of DOE's disclosure of travel and attendance records.

### b.  Law Enforcement Exception

DOE alternatively moves for summary judgment because the disclosure of Manivannan's emails, attendance, and travel records falls within the Privacy Act's "law enforcement" exception.

28

ECF No. 126 at 26-28 (citing 5 U.S.C. § 552a(b)(7)). Under this exception, the Privacy Act authorizes disclosure:

> to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought.

Thus, disclosure of records at the request of a law enforcement agency for investigation, prosecution, or to obtain injunctive relief, is permissible under the Privacy Act. See Sec. & Exch. Comm'n v. Dimensional Ent. Corp., 518 F. Supp. 773, 775 (S.D.N.Y. 1981) (under Section 552a(b)(7), upon written request, disclosure of transcript of parole hearing to the SEC is permissible in attempt to secure injunctive relief to prevent future misconduct); Carson v. United States Dep't of the Army, No. 21-35938, 2022 WL 2188409, at *1 (9th Cir. June 17, 2022) (disclosure of records to local police department was permissible under the Privacy Act because "it was part of a law enforcement investigation"); Davender v. Aviation Supply Off., No. 87-1978, 1988 WL 21961 (E.D. Pa. Mar. 2, 1988) (same).

Here, it is undisputed that Centre County Assistant District Attorney McGoran acted as the District Attorney's designee to prosecute Manivannan. 16 Pa. C.S. § 1420(a) (amended without substantial differences at 16 Pa. C.S. § 14320) (authorizing District Attorney to contract with or retain assistants to carry out District Attorney's duties). It also is undisputed that to further Centre County's prosecution of Manivannan, McGoran sent a written request to DOE with a subpoena in the form of a court order to produce "any and all agency records" for the months of June 2014 and July 2014 that reflect official travel, time and attendance data, and "any and all official electronic communications" between Manivannan and the student intern for the eight-month period January

2014 through August 2014, including "emails, IP addresses, text messages, and phone calls" using DOE issued equipment issued to either Manivannan or the student intern. ECF No. 128-8 at 2-3. It is also undisputed that upon receipt of the subpoena, DOE's Chief Counsel disclosed the requested records. Thus, the Court agrees that DOE's disclosure of emails, telephone, travel, and attendance records falls within the "law enforcement" exception to the Privacy Act. Summary judgment is properly entered in DOE's favor on this basis.

### c. Court Order

In the alternative, DOE contends that the complained of disclosures were authorized under the Privacy Act's exception for a "court order." ECF No. 126 at 28 (citing 5 U.S.C. § 552a(b)(11) (permitting the disclosure of a record "pursuant to the order of a court of competent jurisdiction").

As enacted by Congress, "the plain language of the statute permits disclosure 'pursuant to the order of a court of competent jurisdiction.' 5 U.S.C. § 552a(b)(11) (1982). Neither the statute nor anything in its legislative history specifies the standards for issuance of such a court order." Laxalt v. McClatchy, 809 F.2d 885, 888 (D.C. Cir. 1987). In practice, "exception (11) to s 552a(b) makes it completely clear that the Act cannot be used to block the normal course of court proceedings, including court-ordered discovery." Clavir v. United States, 84 F.R.D. 612, 614 (S.D.N.Y. 1979). Thus, courts have enforced the plain meaning of the text of the Privacy Act according to its "fixed legal or judicially settled meaning" and held that a subpoena is an "order of a court" for the purpose of the Privacy Act. United States v. Fanyo-Patchou, No. 19-0146, 2020 WL 5067911, at *2 (W.D. Wash. Aug. 27, 2020) (citing U.S. S.E.C. v. Hyatt, 621 F.3d 687, 693 (7th Cir. 2010) ("[W]e reject BCI's argument that a subpoena issued ... by an attorney as an officer of the court is not itself a court order...."); Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492,

494 n.5 (9th Cir. 1993) ("[A] subpoena duces tecum is itself a court order...."); Fisher v. Marubeni

Cotton Corp., 526 F.2d 1338, 1340 (8th Cir. 1975) ("A subpoena is a lawfully issued mandate of

the court issued by the clerk thereof."); Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787,

821 (1987) (Scalia, J., concurring in judgment) (referring to a court's power "to prosecute for

contempt those who ... disobey orders necessary to the conduct of [its] business (such as

subpoenas)."). See also In re Barrett, 487 F.3d 353, 363 (6th Cir. 2007) (noting federal agency

may disclose records otherwise protected by § 552a in response to a subpoena).

DOE acknowledges that at least one court of appeals held otherwise. ECF No. 126 at 29

(citing Doe v. DiGenova, 779 F.2d 74 (D.C. Cir. 1985)). There, the court held that a grand jury

subpoena did not qualify as a court order within the exception. The district court in Fanyo-Patchou,

*supra*, declined to follow Doe, finding the interpretation without basis as applied to a court-issued

subpoena.

> [The decision] failed to appreciate the distinction between grand jury subpoenas
> and subpoenas issued by parties. While some circuit courts consider grand jury
> subpoenas to be "instrumentalities of the ... executive branch" rather than court
> orders, see, e.g., In ren Gren, 633 F.2d 825, 827 (9th Cir. 1980) (quoting In re Grand
> Jury Proceedings, 486 F.2d 85, 89–90 (3d Cir. 1973)), those same circuit courts
> hold that a subpoena issued by a party is a court order, see Penwalt Corp., 708 F.2d
> at 494 n.5. The Court must presume that Congress was aware of this distinction
> when it enacted the Privacy Act "unless the statute plainly indicates otherwise."
> Huffman [v. Comm'r, 978 F.2d 1139, 1145 (9th Cir 1992)]. The Privacy Act does
> not.

Fanyo-Patchou, 2020 WL 5067911, at *2 *n.* 2. The Third Circuit has also observed that a validly

issued subpoena operates as a court order. Waste Conversion, Inc. v. Rollins Env't Svcs. (NJ), 893

F.2d 605, 610 (3d Cir. 1990) (treating a subpoena issued as a court order, but finding failure to

comply, "without more," is not in all cases enough to sustain a conviction for criminal contempt.

"[T]he crime of criminal contempt requires a specific intent to consciously disregard an order of the court.").

Here, the subpoena was completed by the assistant district attorney, issued by the Court of Common Pleas of Centre County Pennsylvania, witnessed by the President Judge of the Court of Common Pleas of Centre County, and signed by the Centre County Prothonotary. ECF No. 128-8 at 3. It was issued for an existing prosecution scheduled for trial and included the statement, "You are *ordered by the court* to come to The Centre County Courthouse … to testify on behalf of The Commonwealth … and to remain until excused." Id. (emphasis added). The subpoena identifies the documents the DOE records custodian is ordered to bring to the Courthouse, including the challenged emails, travel, and attendance records, and provides that failure to attend or produce the required documents is subject to sanctions including costs, attorney fees, and imprisonment. Id. Thus, the subpoena meets the requirements of a court order under Pennsylvania law, and so also meets the plain language of the exception set forth in the Privacy Act. See 42 Pa. C.S. § 5905 ("[e]very court of record shall have power in any civil or criminal matter to issue subpoenas to testify, with or without a clause of duces tecum, into any county of this Commonwealth to witnesses to appear before the court or any appointive judicial officer."). Under these circumstances, the Privacy Act does not apply to DOE's production of records pursuant to subpoena. As a result, the Motion for Summary Judgment is properly granted on this basis.

### 4. "Intentional and willful violation" of the Privacy Act

Because Manivannan seeks damages for DOE's alleged violation of the Privacy Act, he must show that the government violated the Act "in a manner which was intentional or willful." Britt, 886 F.2d at 550-51 (quoting 5 U.S.C. § 552a(g)(4)). "The legislative history points out that

the 'intentional or willful' standard is viewed as 'somewhat greater than gross negligence.' Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, reprinted in 120 Cong. Rec. 40,405, 40,406 (1974), quoted in Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987). The standard has been construed as one that requires that the agency 'commit[ ] the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.' Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984) (footnote omitted)." Id. at 551. Proof of state of mind is required. Doe v. Chao, 540 U.S. at 624 (for a plaintiff to recover, the Privacy Act "requires proof of intent or willfulness in addition to adverse effect, and if the specific state of mind must be proven additionally, it is equally consistent with logic to require some actual damages as well").

In Quinn, the Third Circuit held that the agency's retaliatory disclosure of records to an outside agency to initiate a criminal investigation "would meet (g)(4)'s standard." Quinn, 978 F.2d at 131 *n*. 6.  Here, in contrast, it is undisputed that DOE's disclosure of records was pursuant to a subpoena for an ongoing criminal investigation and prosecution of alleged criminal conduct committed by a DOE employee against an agency student intern. It is also undisputed that Hunzeker believed the disclosure was appropriate based on his over 30 years of experience as an attorney and prosecutor for the federal government. During that time, he "worked with Privacy Act and other things" and based on his experience, he believed that the disclosure of Manivannan's records fell within the parameters of a recognized routine use. ECF No. 128-3 at 35-39.  Based on his recommendation and the presentation of a subpoena, DOE's Chief Counsel transmitted the documents as a matter of comity. ECF No. 128-9 at 2. Thus, there is no evidence that the

responsible employees willfully or intentionally disregarded Manivannan's rights under the Privacy Act by the the disclosure of the challenged documents.

Further, Manivannan presents no evidence or argument to establish that DOE acted with the requisite state of mind for a violation of the Privacy Act; that is, that it acted without grounds for believing disclosure to be lawful or in flagrant disregard of his rights under the Privacy Act. Thus, the Motion for Summary Judgment is properly granted for failure to establish a required element of a Privacy Act claim.

### 5. Actual Damages

The Privacy Act provides for recovery of "actual damages" resulting from the "intentional or willful" failure to comply with the Act. F.A.A. v. Cooper, 566 U.S. 284, 295, 301 (2012) (citing Doe v. Chao, *supra*, and 5 U.S.C. § 552a(g)(4)(A) (plaintiffs may recover a minimum award of $1,000 for violations of the act, but only if they prove at least some "actual damages.")). The United States Supreme Court held that "actual damages" requires plaintiffs to show "proven pecuniary or economic harm." Cooper, 566 U.S. at 296–99.

Manivannan alleges that the disclosures resulted in his conviction, the accrual of fees and expenses for his criminal defense and appellate representation, and continuing economic hardship resulting from reputational damage and the loss of future employment, income, and opportunities. ECF No. 59 at 42. But, as argued by the DOE, and as evident in the record before the Court, Manivannan presents no evidence that the alleged Privacy Act violation proximately caused him to suffer pecuniary loss.

It is undisputed that the criminal charges against Manivannan were filed in early 2015 and in early January 2016 and were based on the student intern's account and the police investigation.

It is also undisputed that the complained of disclosure occurred in March 2016. ECF No. 123 ¶¶ 3-5. As related to Manivannan's employment prospects, it is also undisputed that the MDI investigation was concluded before the challenged disclosure and resulted in a recommendation for Manivannan's termination. ECF No. 128-7. Under these circumstances and viewing the available evidence in the light most favorable to Manivannan, his claims related to the timing of the disclosure, the Commonwealth's decision to prosecute him, and any resulting pecuniary loss are speculative at best.  Thus, summary judgment is properly granted in favor of DOE because Manivannan cannot establish that the disclosures at issue caused him pecuniary harm so to permit recovery of damages under the Privacy Act.

### B.        Intentional Infliction of Emotional Distress

Manivannan presents a claim arising under Pennsylvania law for intentional infliction of emotional distress. ECF No. 59 at 51-53. He asserts that the DOE's conduct was extreme and outrageous because it allegedly "created records, then worked to, effectively, subpoena itself for purpose of disclosing those records in violation of the Privacy Act. The agency pursued criminal prosecution of an employee based on unexamined accusations. The agency's counsel became an extension of an adverse prosecutor pursuing meritless criminal claims against an agency employee." Id. ¶ 223.

Under Pennsylvania law, "[a]n action for intentional infliction of emotional distress requires four elements: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910, 914 (3d Cir. 1982) (internal quotation marks and citation omitted). A plaintiff must establish that the defendant's conduct was "so outrageous

in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998). "It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Id. (quoting Restatement (Second) of Torts § 46, comment d; Daughen v. Fox, 539 A.2d 858, 861 (Pa. Super. 1988)).

In this case, DOE believed the disclosure of records did not violate the Privacy Act because it was a routine use, pursuant to a subpoena, and in furtherance of an existing criminal prosecution supported by probable cause. Construing the available evidence in the light most favorable to Manivannan, this conduct does not rise to the level of outrageousness required under Pennsylvania law. Thus, the Motion for Summary Judgment is properly granted in favor of DOE on Manivannan's intentional infliction of emotional distress claim.

## VI.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed on behalf of Defendants United States Department of Energy and the United States of America, ECF No. 125, is properly granted.  An appropriate Order follows.

Dated: June 18, 2024

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing